**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:

SHELLY STUBBS, an individual,

PLAINTIFF,

v.

KRATOS RT LOGIC, INC., a Delaware corporation.

DEFENDANT.

**COMPLAINT**

Plaintiff, SHELLY STUBBS, by and through her undersigned counsel at the law offices of Bryan E. Kuhn, Counselor at Law, P.C., and submits her Complaint against Defendant, KRATOS RT LOGIC, INC., alleging as follows:

**INTRODUCTION**

1. This is an employment discrimination and retaliation suit brought by a former employee of Defendant who was discriminated against during her employment in violation of state and federal law. Plaintiff informed her supervisors that she is Bipolar II and struggles with mental health issues. After Plaintiff's protected disclosure, she was subjected to adverse treatment, demoted, reclassified as a new employee, denied an accommodation, deprived of bonuses, placed on probation, required to work at a different location and terminated.

2. Plaintiff asserts claims of disparate treatment, failure to accommodate, and retaliation in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et*

*seq.* ("ADA") and the Colorado Anti-Discrimination Act, Colo. Rev. Stat. § 24-34-401, *et seq.* ("CADA"). Plaintiff further asserts claims for interference and retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, as interpreted by 29 C.F.R. § 825, *et seq*. Finally, Plaintiff asserts a state law claim against Defendant for wrongful termination in violation of public policy.

## PARTIES

3. Plaintiff, SHELLY STUBBS ("Plaintiff" or "Ms. Stubbs"), is a citizen of Douglas County who presently resides at 989 Eaton Street, Castle Rock, CO 80104.

4. Defendant, KRATOS RT LOGIC, INC.,[1] ("Defendant Kratos" or "Kratos"), is for-profit Colorado corporation with a headquarters in Colorado at 12515 Academy Ridge View, Colorado Springs, CO 80921 and a registered agent at 1900 W. Littleton Blvd., Littleton CO 80120.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the action pursuant to 28 U.S.C. § 1331, pursuant to the FMLA, 29 U.S.C. § 2601, *et seq.*, and pursuant to the ADA, 42 U.S.C. § 12101, *et seq.*

6. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

7. In addition, this Court has jurisdiction over the Defendant as the complained of unlawful employment practices took place in Colorado and the Defendant maintains substantial, ongoing business operation(s) in this state.

---

[1] At times relevant to the Complaint, Defendant was called Real Time Logic, Inc. On August 6, 2018, Real Time Logic, Inc., filed an Articles of Amendment with the Colorado Secretary of State changing the name to Kratos RT Logic, Inc.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b) because the employment practices and other conduct alleged to be unlawful were committed in the District of Colorado.

9. At all relevant times, Plaintiff was an "employee", as set forth in 42 U.S.C. § 1211(4) of the ADA, 29 U.S.C. § 2611(2) of the FMLA, and Colo. Rev. Stat. § 24-34-401(2) of the CADA.

10. At all relevant times, Kratos was covered by the definitions of "employer" set forth in 29 U.S.C. § 2615(a) of the ADA; 29 U.S.C. § 2611(2) of the FMLA; and, Colo. Rev. Stat. § 24-34-401(3) of the CADA.

**FACTUAL ALLEGATIONS**

11. Plaintiff was hired by Defendant on a part-time basis in August 2011, as an Integrator through a contract with ADD Staff Temporary Services.

12. Defendant is a wholly-owned subsidiary of Kratos Defense & Security Solutions, Inc., and provides processing systems and software for communication with satellites, spacecraft, missiles, and airborne platforms.

13. Ms. Stubbs proved to be a valuable asset and accepted a full-time position with Kratos as an Engineering Support Technician ("EST") in May 2013.

14. Ms. Stubbs continued her excellent work record as demonstrated by her reviews under her immediate supervisor, Mike Conca (Project Manager), and her manager, Derek Jones, (Business Area Manager).

15. In Plaintiff's 2014 review, Mr. Jones wrote that Ms. Stubbs "made everyone's job easier."

16. In or around October 2014, Scott Criley replaced Mr. Jones as Business Area Manager and became Ms. Stubbs' manager.

17. Upon Mr. Criley's hire, he made it clear that, in the hierarchy of the organization, Ms. Stubbs was at the bottom.

18. At mid-year and annual reviews, Mr. Criley provided few positive comments but also offered minimal, if any, objectives, growth plans, or areas mentioned for Ms. Stubbs to improve.

19. Ms. Stubbs objected to the untrue statements in her evaluations, but Mr. Criley ignored her protests.

20. Plaintiff prepared detailed rebuttals to her negative performance feedback; for the first review Mr. Criley failed to submit the rebuttal to HR.

21. In subsequent reviews, Plaintiff submitted rebuttals directly to HR but her concerns were never investigated or acknowledged and the working relationship with Mr. Criley did not improve.

22. Plaintiff repeatedly sought feedback from her co-workers and Mr. Conca, who always said that she was doing a good job.

23. The only negative feedback Ms. Stubbs received was on her reviews from Mr. Criley.

24. Plaintiff was repeatedly demoralized by Mr. Criley's words and actions.

25. Due to the ongoing negative treatment from Mr. Criley, Ms. Stubbs began to break down mentally.

26. Ms. Stubbs felt that she had to express to both Mr. Criley and Mr. Conca how Mr. Criley's actions and words were distracting her from her job.

27. The only way Ms. Stubbs felt she could do this was to reveal that she is Bipolar II and struggles with clinical depression and anxiety.

28. Though humiliating, Ms. Stubbs disclosed her diagnoses at the end of 2016, including a document listing stressors, symptoms, reactions and ways Mr. Criley and Mr. Conca could help prevent difficulties.

29. The purpose of the document was to give Mr. Criley and Mr. Conca details about the cause and effect of the disorder, highlight areas that effect Ms. Stubbs and ways her employer could help Ms. Stubbs avoid these symptoms.

30. Ms. Stubbs' document also included clear medical advice and links to credible websites so that Mr. Criley and Mr. Conca could further research the issues.

31. Unfortunately, after Ms. Stubbs' revelation of the same, the acts of hostility and disdain toward her from Mr. Criley only worsened.

32. Ms. Stubbs reached out to Teresa Martinez (Senior Manager, HR) and Heather Lewis (Associate HR), on or about January 30, 2017, to set up a meeting.

33. Ms. Stubbs informed Ms. Martinez and Ms. Lewis of everything that she was experiencing, as well as disclosed her medical conditions.

34. Ms. Stubbs forwarded the documentation she had presented to Mr. Criley and Mr. Conca to Ms. Martinez, Ms. Lewis, and Kimberly Livesay (HR Manager).

35. Plaintiff's letter also provided a list of organizations that perform training sessions about psychiatric impairments, other disabilities, and the ADA.

36. Ms. Livesay initially stated that it would be a good idea for the company to conduct a training, but ultimately ignored the same.

37. On February 20, 2017, Ms. Stubbs' psychiatrist sent a document to Defendant confirming that Plaintiff is Bipolar II, has Attention Deficit Disorder, and struggles with increased depression and anxiety.

38. After receiving the letter and despite Ms. Stubbs' continuous and specific requests for help, HR failed to begin the interactive process or discuss any possible accommodations.

39. Quite the opposite, HR, fully aware of the situation, allowed Mr. Criley to add to the volume of work in direct contradiction to the documentation that Ms. Stubbs had provided.

40. Ms. Stubbs asked Mr. Criley if he had even reviewed the documentation she provided him to which Mr. Criley replied, "I am not going to take something printed from the internet and use it as a reason to give someone special treatment."

41. Mr. Criley and HR continued to ignore Ms. Stubbs' accommodation requests.

42. Ms. Stubbs immediately noticed an increase of harassment and blatant attempts from Mr. Criley to set her up for failure.

43. On March 30, 2017, Mr. Criley placed the entire blame of a team project on Ms. Stubbs and presented her with a performance improvement plan ("PIP").

44. Ms. Stubbs' job performance statistics on the PIP demonstrated an increase in production and substantiated her increased amount of work.

45. However, the PIP required Ms. Stubbs to complete specific tasks that were in direct contradiction to the accommodations and assistance that she had requested.

46. Ms. Stubbs was also given her annual review for 2016-2107 on March 30, 2017.

47. Mr. Criley's comments on the review reflected many of the symptoms of Ms. Stubbs' disability, about which Ms. Stubbs had asked for help throughout the year.

48. Plaintiff provided a rebuttal to the review but was ignored.

49. The added burdens placed on Ms. Stubbs by the PIP led her to break down more and more each day.

50. Ms. Stubbs sent an email requesting a meeting with Jerry Meleski (Vice President), explaining her situation and requesting the help she had thus far been denied.

51. Mr. Meleski replied that he was aware of the situation, but refused to meet with Ms. Stubbs, stating that she needed to follow the PIP.

52. Ms. Stubbs also contacted and eventually met with John Monahan (President).

53. During the meeting, Mr. Monahan spoke at length about an employee who recently passed away as if to make light of Ms. Stubbs' issues in comparison.

54. Mr. Monahan stated that he did not want any further details, he was already aware of the situation, and detailed his respect of and personal friendship with Mr. Criley.

55. The mounting pressure and stress ultimately led to an increase in the symptoms of Ms. Stubbs' disability causing her to reach her breaking point.

56. Ms. Stubbs began discussing available leaves with HR.

57. Ms. Livesay promised Ms. Stubbs that under the protection(s) of the FMLA, Plaintiff could return her to the same position, in the same location, if she decided to take leave.

58. On May 30, 2017, Ms. Stubbs began her leave under the FMLA.

59. Ms. Stubbs' medical provider returned the FMLA certification on June 8, 2017, and she was approved from leave from May 30, 2017, through August 22, 2017.

60. The separation from work and Mr. Criley's harassment was precisely what my client needed and the symptoms of her disability dramatically improved.

61. On August 30, 2017, Plaintiff's doctor provided certification which released her back to work on September 5, 2017.

62. However, Defendant pushed out her return because her supervisors were on vacation.

63. On September 10, 2017, Plaintiff returned to work.

64. Upon her return, Ms. Stubbs was not permitted to continue in her EST position but was demoted to an Integration Technician.

65. After she had worked diligently for the company for many years, Ms. Stubbs was demoralized by the lower status and change of duties.

66. Moreover, Ms. Stubbs' pay was much lower than all of her male Integration Technician counterparts, despite her seniority and years of experience.

67. Further, Defendant informed Ms. Stubbs that if she wanted to keep a job with the company, she would have to work out of the Colorado Springs facility instead of her previous, much closer workplace at the Denver facility.

68. Ms. Stubbs' commute nearly doubled due to the change in facilities taking this single mother farther away from her son who struggled with his own mental issues.

69. Defendant provided three (3) reasons as to why she was transferred: 1) production was being moved to Colorado Springs; 2) Ms. Stubbs' position was no longer available; and, 3) Ms. Stubbs' position was absorbed.

70. Ms. Stubbs explained to HR that none of the reasons proffered were accurate as if true, that would make it impossible to properly run the Englewood facility.

71. In fact, Kratos was sending people from the Colorado Springs facility to Denver to do the exact same duties that Ms. Stubbs had been in charge of prior to her leave of absence.

72. Furthermore, Defendant posted Ms. Stubbs' EST position in Denver, less than a year after her demotion.

73. The extra commute exacerbated Ms. Stubbs' stress and anxiety.

74. Additionally, even though she had been working for Kratos for over six (6) years, Ms. Stubbs was treated as a new employee and placed on a sixty (60) day "trial period" without the option to change positions for a year.

75. Plaintiff asked Defendant why she was classified as a new employee but was ignored and not provided an answer.

76. On or about September to October 2017, Mr. Criley provided documentation closing out Ms. Stubbs' PIP stating that she "performed at an acceptable level" on the majority of the projects contained therein.

77. Ms. Stubbs provided a response to the same on October 4, 2017.

78. Similarly, Ms. Stubbs' schedule was altered with the changes, as she had previously been able to work four (4) days a week, Monday through Thursday, for ten (10) hours each day, so that she could have Fridays off to care for her son and maintain her own mental and physical health.

79. Ms. Stubbs spoke with her new manager in Colorado Springs, Kirk Smith (Director), and requested Fridays off as she had been permitted to do for the past six (6) years.

80. Ms. Stubbs provided the same documentation about her medical conditions to Mr. Smith.

81. On October 18, 2017, Ms. Stubbs provided a Kratos Defense Leave Administration Center Return to Work Certification from Dr. Howard J. Entin stating that Plaintiff was released to duty with restrictions that she "ease back to full time work schedule" and work eight (8) hours per day/four (4) days per week.

82. On November 6, 2017, Ms. Stubbs provided a Kratos Defense Leave Administration Center Return to Work Certification from Dr. Entin stating that Plaintiff was released to duty with the ongoing restriction of a Monday to Thursday schedule with Fridays off.

83. Ms. Martinez informed Mr. Smith that Defendant was "not legally required to provide any accommodations" for Ms. Stubbs and therefore, denied her request.

84. Ms. Stubbs was repeatedly told by HR that she needed to "let it go and move on," to "have a positive attitude", and "you should feel lucky that Colorado Springs is willing to accommodate your employment there."

85. Ms. Stubbs informed HR that what the company was asking was impossible given her medical conditions and circumstances.

86. The combination of the demotion, significant reduction of duties, longer commute, change of schedule and added lack of acknowledgement by being placed on a sixty (60) day probation period, only added to the devastation Ms. Stubbs felt after more than six (6) years of hard work, growth and love for her job.

87. By the end of 2017, Ms. Stubbs was nearing her breaking point once again.

88. Though Ms. Stubbs received positive feedback about her performance after passing her "60-day trial period" she was not awarded the end of the year bonus for 2017 for the Tactical and Network Communications ("TNC") division where she worked a majority of the year.

89. Unfortunately, by the end of February 2018, Ms. Stubbs could no longer endure the continuing mental strain and work environment.

90. On February 26, 2018, Ms. Stubbs informed Mr. Smith that she was no longer able to provide her best work because she could not focus due to the ongoing trauma, PTSD and daily breakdowns and felt she was forced to step down given her disability and the work environment.

91. On February 28, 2018, Mr. Smith and Ms. Martinez met with Ms. Stubbs to terminate her employment.

92. Plaintiff filed a formal Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 23, 2018.[2]

93. On November 26, 2018, Plaintiff received the Notice of Right to Sue from the EEOC and timely brings her Complaint within ninety (90) days thereafter.

**FIRST CLAIM FOR RELIEF**
*(Violations of ADA – Disparate Treatment, Failure to Accommodate, and Retaliation)*

94. Plaintiff incorporates by reference paragraphs 1 through 93 as if fully set forth herein.

95. A disparate treatment claim arises when an employer takes adverse action against an employee because of her disability.

---

[2] Plaintiff filed a Charge of Discrimination, assigned Case No. 541-2018-01571 on October 23, 2018, with the EEOC in which she alleged that she was discriminated against based on her sex and disability and retaliated against for complaining about this unlawful discrimination.

96. A failure to accommodate claim arises under the ADA when an employer fails to meet its legal obligation to reasonably accommodate an employee with a known disability.

97. A retaliation claim arises when an employer takes adverse action against an employee because of her protected opposition to harassment, discrimination and/or retaliation.

98. Ms. Stubbs' medical condition substantially limited one or more of her major life activities, including, but not limited to, working, concentrating, eating, sleeping, lifting, and caring for herself.

99. Ms. Stubbs was able to perform the essential functions of her position with reasonable accommodations.

100. At all relevant times, Ms. Stubbs was a qualified individual with a known or perceived disability as defined by the ADA.

101. Defendant knew of Ms. Stubbs' qualifying disability of Bipolar II.

102. Defendant subjected Plaintiff to less favorable terms and conditions of her employment and took adverse actions against her due to her disabilities as described in this Complaint, including: failing to provide any accommodations, treating her with hostility, demotion, significant change of duties, longer commute, change of schedule, lack of respect and acknowledgement by being placed on a sixty-day probation period as well as denial of previous successes with Kratos, and termination.

103. Ms. Stubbs requested a reasonable accommodation(s) for her disability.

104. Defendant failed to fully engage in the interactive process.

105. Defendant denied Ms. Stubbs' request for a reasonable accommodation(s).

106. Based on information and belief, Defendant accommodated other employees when necessary.

107. Plaintiff engaged in protected activity within the meaning of the ADA when she requested an accommodation, and reported her concerns about the treatment, increased work load, and disciplinary actions from her supervisor.

108. Kratos wrongfully terminated Ms. Stubbs because of her disability.

109. Defendant's actions were engaged in intentionally and willfully, with malice or in reckless disregard for Ms. Stubbs' federally protected rights.

110. As a result of Defendant's unlawful employment practices, Ms. Stubbs has suffered economic and non-economic damages including, but not limited to, severe emotional distress, mental pain and suffering, inconvenience, and loss of income.

**SECOND CLAIM FOR RELIEF**
(*Violations of the Family and Medical Leave Act - Interference*)

111. Plaintiff incorporates by reference paragraphs 1 through 110 as if fully set forth herein.

112. Defendant is a covered employer by the FMLA as it had at least fifty (50) employees or more employed for at least twenty (20) work weeks in the current or preceding calendar year in an employing unit within a seventy-five (75) mile radius.

113. Plaintiff was eligible for FMLA because she had worked for Defendant for twelve (12) months, had a qualifying medical condition, and was employed at a worksite where fifty (50) or more employees were employed within a seventy-five (75) mile radius.

114. Ms. Stubbs was entitled to medical leave for her own serious medical condition.

115. Plaintiff provided sufficient notice of her intent to take such leave.

116. After Plaintiff took FMLA leave, Defendant refused to allow her to return to her position.

117. These actions chilled Plaintiff's willingness to exercise her right as an employee to take leave under the FMLA.

118. Defendant terminated Plaintiff without allowing her to return from leave.

119. Plaintiff was entitled to reinstatement to her prior position or a substantially equivalent position at the conclusion of her leave.

120. Defendant did not restore Plaintiff to her prior position or a substantially equivalent position.

121. Defendant's adverse actions, including demoting Plaintiff, were related to her exercise of Plaintiff's FMLA rights.

122. Defendant's adverse employment actions provided a disincentive and punished Plaintiff for taking FMLA leave.

123. Defendant's action interfered with Plaintiff's right to take FMLA leave, her exercise of her FMLA rights, and her right to return to her job upon completion of FMLA leave.

124. Defendant's actions towards Plaintiff were aimed at preventing her from exercising her FMLA rights.

125. Defendant's actions and omissions were performed willfully and were not done in good faith.

126. Throughout Plaintiff's employment, Defendant knew that interference with an employee's right to FMLA-granted leave was unlawful under the FMLA.

127. As a direct and proximate result, Plaintiff has been damaged in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**
(*Violations of the Family and Medical Leave Act - Retaliation*)

128. Plaintiff incorporates by reference paragraphs 1 through 127 as if fully set forth herein.

129. Defendant is a covered employer by the FMLA as it had at least fifty (50) employees or more employed for at least twenty (20) work weeks in the current or preceding calendar year in an employing unit within a seventy-five (75) mile radius.

130. Plaintiff was eligible for FMLA because she had worked for Defendant for twelve (12) months, had a qualifying medical condition, and was employed at a worksite where fifty (50) or more employees were employed within a seventy-five (75) mile radius.

131. Plaintiff was entitled to leave under the FMLA, and she provided sufficient notice of her intent to take such leave.

132. Plaintiff engaged in protected activity by taking leave under the FMLA.

133. Defendant's adverse actions, including terminating Plaintiff, were related to her exercise of Plaintiff's FMLA rights.

134. There was a causal connection between the protected activity and the adverse employment action.

135. Throughout Plaintiff's employment, Defendant knew that discriminating or retaliating against employees for taking FMLA leave, asserting FMLA rights, or opposing FMLA violations was unlawful under the FMLA.

136. Defendant's actions towards Plaintiff were intentional and willful violations of the FMLA.

137. As a direct and proximate result, Plaintiff has been damaged in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF
*(Violations of the CADA – Disparate Treatment, Failure to Accommodate, and Retaliation)*

138. Plaintiff incorporates by reference paragraphs 1 through 137 as if fully set forth herein.

139. Plaintiff belongs to a protected class based on her disabilities.

140. Defendant, its employees, and agents unlawfully discriminated against Plaintiff based on her disability.

141. Plaintiff demonstrated a pattern of opposition to the unlawful harassment, retaliation, and discrimination that she experienced based upon her disabilities while employed by Defendant.

142. As a result of Plaintiff's protected opposition to discrimination, Defendant retaliated against her by subjecting her to less favorable terms and conditions of employment including, but not limited to: adverse treatment, demotion, reclassification as a new employee, denial of an accommodation, deprival of bonuses, placement on probation, requiring her to work at a different location and termination.

143. Defendant's actions were unlawful, intentional, willful, and done in reckless disregard of Plaintiff's legal rights as protected by the CADA.

144. Defendant's conduct as described herein constituted discriminatory or unfair employment practices in violation of Colo. Rev. Stat. § 24-34-402(1)(a).

145. As a direct, proximate and foreseeable result of the Defendant's intentional actions in this regard, the Plaintiff suffered damages, including lost wages and benefits.

**FIFTH CLAIM FOR RELIEF**
*(Wrongful Termination in Violation of Public Policy)*

146. Plaintiff incorporates by reference paragraphs 1 through 145 as if fully set forth herein.

147. The CADA constitutes the public policy of the State of Colorado by prohibiting, among other things, discrimination against employees in the basis of their sex and retaliation against employees who exercise their rights by opposing unlawful employment practices.

148. The policies set forth in the CADA are policies that truly impact the public.

149. Plaintiff was terminated by Defendant in retaliation for exercising a job-related right or privilege, and the termination undermines a clearly expressed public policy.

150. Defendant's conduct was malicious, willful and/or wanton, and exhibited reckless or callous indifference to Plaintiff's protected rights.

151. As a direct and proximate result of such false representations, Plaintiff has suffered and continues to suffer a loss of wages and benefits, a loss of job, loss of career opportunities and interruption of career path, emotional distress, inconvenience, mental anguish, loss of enjoyment of life and other consequential damages.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for a judgment to be entered in her favor and against Defendant, and order the following relief:

    a. Compensatory damages, including but not limited to those for emotional distress, inconvenience, mental anguish, and loss of enjoyment of life;

b. Reinstatement or front pay and benefits in lieu thereof;

c. Back pay, benefits, and other economic losses;

d. Injunctive and/or declaratory relief;

e. Liquidated damages on all claims allowed by law;

f. Punitive and exemplary damages as allowed by law;

g. Relevant statutory damages;

h. Pre-judgment and post-judgment interest at the highest lawful rate;

i. Attorney fees and costs of this action, including expert witness fees, as available by law; and,

j. Any such further relief allowable by law or as justice requires.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable in the instant action.

Respectfully submitted on January 31, 2019

        BRYAN E. KUHN, COUNSELOR AT LAW, P.C.

*Original pleading bearing original signature maintained in the offices of Bryan E. Kuhn, Counselor at Law, P.C.*

s/ *Kate W. Beckman*
Bryan E. Kuhn, Esq. #33642
Kate W. Beckman, Esq. #42416
1660 Lincoln Street, Suite 2330
Denver, Colorado 80264
(p) (303)424-4286 (f) (303)425-4013
Bryan.Kuhn@beklegal.com
Kate.Beckman@beklegal.com
ATTORNEYS FOR PLAINTIFF